EDGAR E. VREELAND, executor,

*v.*

WALTER WESTERVELT, administrator, et al.

A testator gave the residue of his personal estate to his widow for life, with remainder to his children, and appointed her one of his three executors. In 1874 the orphans court allowed their account, which set off $7,200 to the widow as her portion. The securities were given to her, and she collected them and re-invested the proceeds in her own name. At her death, in 1884, the funds were claimed by her administrator as her own property. They consist, in part, of a note for $2,500, made by her administrator, who is one of the remaindermen, and who is insolvent, and one for $1,500, made by complainant and his wife, the latter being one of the remaindermen. The widow's next of kin and the testator's remaindermen are substantially the same persons.—*Held,* (1) that the presumption of law is that the funds found in the

Vreeland *v.* Westervelt.

widow's possession at her death are the residue of testator's personal estate, there being no proof that she had any property of her own; (2) that the decree of the orphans court did not vest the title to this residue absolutely in the widow; (3) that the mere fact that those who are claiming or are entitled to the funds, either as remaindermen of the testator or as next of kin of the widow, are the same persons, does not prevent relief sought on the ground of the administrator's admitted inability to pay his note for $2,500, which exceeds his share of said remainder, and the alleged inability of complainant to pay his note of $1,500, which exceeds his wife's share thereof; nor does complainant's delay in filing his bill estop him; nor the alleged collusion between him and the administrator to gain time to pay their notes, because the other remaindermen might have called them to account promptly.

On final hearing on bill, answer and proofs.

*Mr. A. D. Campbell*, for the complainant.

*Mr. P. W. Stagg*, for the defendant.

PITNEY, V. C.

The bill is filed by an acting surviving executor against the administrator of his co-executrix to recover certain specific assets, consisting of promissory notes and bonds and mortgages in the possession of the administrator, and inventoried by him as a part of the individual personal estate of the executrix. The securities in question are all payable to the deceased executrix individually, and bear or their face no evidence that they formed a part of the estate of the testator. The allegation on the part of the complainant is, that they were given for money belonging to the estate of the testator.

Garret I. Westervelt, the testator, died on December 31st, 1870, and by his will, admitted to probate January 17th, 1871, appointed his widow, Harriet Westervelt, his son, John Westervelt, and his son-in-law, Edgar E. Vreeland, the complainant, executrix and executors of his will. By it he specifically bequeathed certain bank stock to one of his daughters, a gold watch to one of his sons, the contents of his stables to two other of his sons, and then follows this clause:

"*Fifth.* All the rest and residue of my personal property, of every kind whatsoever, I give and devise to my beloved wife Harriet, to have, use and enjoy

during her widowhood, empowering her at any time during her widowhood to distribute any part or all of my household furniture to such of my children and in such proportion as she shall think proper to give the same."

He then empowered his executors to sell his real estate and gave them the proceeds in trust for the benefit of his wife during her widowhood, and then—

"*Eighth.* Upon the death or remarriage of my wife Harriet, I give and devise all the residue of the personal property hereinbefore devised to her, that may not have been consumed and disposed of by her, and the proceeds of the sale of my lands and real estate in the hands of my executors as follows:

"1st. To my children, John, Walter, Jacob, Alletta, Rachel Ann, wife of Edgar E. Vreeland, and Mary Salina, wife of Hannibal K. Wright, each one-eighth.

"2nd. To the heirs of my daughter Sarah one-eighth to be divided among them, share and share alike, and

"3rd. The remaining one-eighth to my executors to be invested by them in trust for my son William, which sum so invested, with the interest accruing thereon, I hereby direct my executors to pay to my son William in such amounts and at such time and times as they shall deem necessary to supply his immediate personal wants; and in case either of my said children, John, Walter, Jacob, Alletta, Rachel Ann, wife of Edgar E. Vreeland, Mary Salina, wife of Hannibal K. Wright, and my daughter Sarah, die before the distribution of my estate, as hereinbefore directed, without leaving lawful issue, and upon the death of my son William, it is my will and I do hereby further direct that the shares represented by such decedents shall be divided among the survivors of them or their heirs, share and share alike, except my son William or his heirs, the child or children of the decedent taking the share which his, her or their parents would have taken if living, it being intended that my son William shall receive no other part of my estate except as hereinbefore directed to be paid to him by my executors."

The inventory of the estate amounted to $11,139.61, and with this amount the executrix and executors were charged in their joint account, allowed by the orphans court of Bergen county in May, 1874. They also charged themselves with the sum of $4,500 as the proceeds of the sale of certain real estate. They seem to have ascertained the net residue of the personal estate, for the purpose of the fifth clause of the will, at $7,209.99, for which amount they were allowed a credit in their account in these words:

Vreeland *v.* Westervelt.

" These accountants further pray for allowance for ' personal property bequeathed to widow after the payment of debts &c., seven thousand two hundred and nine dollars and ninety-nine cents.' "

They are also allowed a credit of $698.75 for the appraised value of the household furniture so bequeathed to the widow.

At or before this accounting, interest-bearing securities to the amount of at least $7,209.99 were handed to the widow by the executors, and she seems to have treated them very much as if they were her own property, collecting and re-investing them in her own name.

She died June 25th, 1884, intestate. Shortly after her death the complainant examined her effects and found among them the securities mentioned in the bill and forming the subject of the present controversy, and took possession of them. Afterwards, on October 7th, 1884, John Westervelt, his surviving co-executor, was removed from the office of executor, upon his own application, by the orphans court of Bergen county, and shortly after that his brother, Walter Westervelt, was appointed administrator of his mother, Harriet, and, upon his demand, complainant handed to him the securities in question, and afterwards demanded their return and filed this bill to establish his title thereto, basing it on the allegation before stated, that these securities were the result of the investment of the estate of Garret I. Westervelt.

To this bill neither Walter, the administrator of Harriet, nor Jacob, nor William, nor Mrs. Vreeland, made any answer or interposed any defence. The three daughters, Mrs. Wright, Mrs. Bogert and Alletta Westervelt, have joined in an answer, in which they do not deny that the securities in question were the result of the funds of the estate of their father, but set up as a bar to the present suit the allowance made in the words above quoted of $7,209.99 in the account of 1874, and the further fact that complainant has filed one or more accounts since that date, in which he did not charge himself with the amount of assets turned over to their mother, or any part of them, and claim that he is now estopped from claiming them. They further say, truly, that the same persons are next of kin of their mother, and

are entitled to equal distribution of her estate, as are legatees under their father's will, and they contend that the present suit is a vain one and is not prosecuted in good faith, but for the purpose of defeating them out of their shares in both estates.

The defendant, William Westervelt, files a separate answer, in which he sets up the same matters that his sisters do in their answer, and, in addition thereto, sets up the further fact that, in the early part of the year 1887, the complainant and the defendant, Walter Westervelt, were severally cited to account, and did account, to the orphans court of Bergen county; that Walter Westervelt, in his account, charged himself with these very assets; that exceptions were filed to their several accounts, litigation resulted and proceedings were about being taken to order distribution of the estate of Harriet Westervelt, including these assets, when the complainant's bill was filed and an injunction obtained from this court against further proceedings in that court, and then alleging that the bill was filed by collusion between complainant and defendant, Walter Westervelt, in order to prevent such distribution and to delay the settlement of the several estates, and showing, in support of that allegation, that a large proportion of the securities in question consist of the promissory notes of the complainant and his wife and of the defendant, Walter Westervelt. He also denies that the securities in the hands of Walter Westervelt, as administrator, belong to the estate of complainant's testator, and he especially relies, in his answer, upon the allowance of the credit in the account of 1874 before referred to and recited.

Testimony was taken in support of the allegations of the pleadings. At the hearing the defendant's counsel relied upon three propositions:

*First.* Failure in the proof to trace the moneys of the estate of Garret I. Westervelt into the securities which were in Harriet's possession at her death.

*Second.* Supposing that this issue of fact should be found against him, he contended that the decree of May, 1874, allowing the credit of $7,209.99 to the complainant and his co-executor and executrix in their account, must be held as an adjudication

Vreeland *v.* Westervelt.

by the orphans court of Bergen county that, under the fifth clause of the will, the net residue of the personal property went to the widow absolutely, and therefore that it cannot be reclaimed in any shape by the complainant; and

*Third.* That the bill is an idle one and can serve no useful purpose, inasmuch as the legatees under the will of the testator take equal shares, and are the same persons as the distributees of the estate of Harriet Westervelt.

It should have been stated before, that, by codicil to his will, Garret I. Westervelt gave the one-eighth of his estate to his daughter Sarah directly and out and out, and revoked that part of his will which gave it to her children.

Defendant contended, in support of his third point, that, under the eighth clause, William's share was really given to him out and out, and that none of the other children have any prospective rights in remainder in it.

With regard to the second point, that the allowance of $7,209.99 in the account so often referred to, amounted to an adjudication vesting it absolutely in the widow, it seems to me too plain for argument that no such construction can be put on that decree. The language so used by the surrogate in stating the account in the body of the account, amounts to no more than a statement that so much money or assets had been delivered to the widow under the fifth clause of the will. The decree of the court thereon is in the usual form; reciting its report by the surrogate, and that no exceptions being made thereto, the court do thereupon allow the same in all things as allowed by the surrogate. It nowhere appears that the question of the construction of the fifth clause was presented to the court, or considered or adjudicated upon by it; nor was such consideration and adjudication necessary for the making of the kind of decree that was made. The utmost effect that can be given to it is, that it approved the payment or delivery of that amount of assets to the widow, who was an executrix with the other accountants. It does not directly, and cannot be held indirectly to adjudge that the fund so delivered to her should not be reclaimed by the executors at her decease.

37

It seems very clear, under the authorities, that the gift of the residue of the personalty was not absolute. *Jones* v. *Stites, 4 C. E. Gr. 324; Parker* v. *Moore, 10 C. E. Gr. 228; Hennion* v. *Jacobus, 12 C. E. Gr. 28.*

I presume that the executors, in dealing as they did with this part of the estate, relied upon the circumstances that the testator made a difference between the residue of his personalty and the proceeds of the sale of the real estate which, by the seventh clause of his will, he gave to his executors " to be invested by them in trust for my wife Harriet, the interest accruing to be paid to her as it may grow due so long as she remains my widow."

As to the first point taken by the defendant, I have examined the evidence carefully, and am entirely satisfied that all the securities in question were the result of moneys belonging to the estate collected by the widow and re-invested in these securities. The evidence is clear, and, to my mind, satisfactory, that she never had any other source from which she could have made these investments. This was admitted by the counsel, and, in fact, was set up by him affirmatively as part of the ground of his argument. The substance of his argument on this point was, that the account and proofs show that the widow received from her co-executors, not only the securities representing that portion of the body of the estate of her husband, but also large sums of money as the interest on it, and that afterwards she herself collected large sums for interest, and that it was just as likely that these securities were the result of the investment of the interest that she received as it was that they were the result of the principal collected. In other words, that the principal and interest were inextricably mixed together, so that it could not be proved that these securities represented the principal alone. But I think the presumption very clearly and decidedly to be, that, if a tenant for life is also trustee of the principal, and spends an amount equal to the interest, and keeps invested an amount equal to the principal, although in his name as an individual, he has spent the interest and preserved the principal.

The third point presents more reason for hesitation. If these assets were all the obligations of third parties, and the bequests

of the will were simple and direct, without any remainder over in any contingency, it might be that the court could properly say that the suit was an idle one. But the present case presents a different aspect. One of the securities in question is the promissory note of Walter Westervelt for $2,500, and he seems to admit himself to be unable to pay it. The total amount of the assets of Harriet's estate, including the disputed securities, is only about $7,000, and Walter's share in it would be less than $1,000, while his worthless note, forming part of the $7,000, is $2,500.

The estate of the testator in complainant's hands, exclusive of these disputed assets, is about $5,000 and unless Walter's note is reclaimed by the complainant, and held by him as part of the testator's estate, Walter will be enabled to receive in cash one-eighth of the $5,000, while he will really owe the estate a large balance. So with the note for $1,500, made by the complainant and wife. It amounts to more than his wife's share in her mother's estate, including the disputed assets, and its retention among the assets of her estate will work injustice to the other next of kin, if it be true, as alleged but not proven, that complainant is, to say the least, no stronger financially than he should be.

In the second place, it is not clear that, under the eighth clause of the will, some part of the share of William will not sooner or later go to one or more of his brothers or sisters. The construction of that clause in the will, so far as it affects William's share, has not been raised by the pleadings, and cannot be properly determined in this cause.

Nor do I think that, if the answering defendant had made out his allegation that this bill was filed not in good faith for the reason stated in his answer, but simply to enable the complainant and the defendant to obtain further time for the payment of their several indebtedness to the estate, that would be any reason for delaying the relief prayed for in this bill. Defendant's counsel very properly criticised the conduct of the complainant in so long delaying to assert the rights he now asserts by his bill. There seems to have been a great deal of indecision mani-

fested by complainant, which, were it not that he was acting,. as it would seem, all the time by advice of counsel, I should have attributed to ignorance of his rights. Certainly he should have filed this bill as soon as letters of administration were taken out on Harriet Westervelt's estate, and not permitted the complications which have arisen to arise. I find no excuse in the facts for the delay, but do not think that the delay is, after all,. any defence to this action. If it be true that complainant and defendant, Walter Westervelt, have been delaying the proper adjustment of these equities and the settlement of their accounts. because they were both debtors to the estate and wanted time, it is also true that the defendants now complaining of such delay had the power at all times to call them to account and compel prompt action.

Upon the whole, I think complainant is entitled to the relief prayed for, and I will advise a decree accordingly. Complainant's costs to be paid out of the estate.